UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
KENNETH B. PROCHASKA,

        Plaintiff,

   -against-

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,

        Defendant.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**
13-CV-02270 (FB)

*Appearances*
*For the Plaintiff:*
CHARLES E. BINDER, ESQ.
Law Offices of Harry J. Binder and Charles E. Binder, P.C.
60 East 42nd Street, Suite 520
New York, NY 10165

*For the Defendant:*
LORETTA E. LYNCH, ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

      Kenneth Prochaska ("Prochaska") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Both parties move for judgment on the pleadings. For the reasons stated below, the Commissioner's motion is denied and Prochaska's motion is granted insofar as the Court remands the case for further proceedings.

**I**

      In April 2010, Prochaska began experiencing lower back pain that shot down to his left foot. At the time, he was employed as a construction worker. Because of his pain, he

1

filed an application for DIB on March 15, 2011, alleging disability since April 24, 2010. The Social Security Administration denied his claim. Upon Prochaska's request, an Administrative Law Judge ("ALJ") conducted a hearing and denied his claim. Following an appeal of the ALJ's determination, the Appeals Council denied his request for review, rendering final the Commissioner's decision to deny benefits. Prochaska timely sought judicial review.

The relevant evidence proffered at the hearing before the ALJ is summarized below.

**A. Medical Evidence**

*1. Treating Physician Dr. Ranjana Mehta*

On April 12, 2010, Prochaska saw Dr. Ranjana Mehta for lower back pain that shot down to his left foot. After x-rays revealed mild degenerative changes and lumbarization at the level of S1, he was diagnosed with lumbosacral radiculopathy. On May 14, 2010, an "MRI" showed degenerative changes most notable for a disc extrusion at L5-S1 causing impingement of the descending left S1 nerve root and severe right neural foraminal narrowing and lumbarization of the S1 vertebral body. He also had muscle spasms on examination. Dr. Mehta then saw him on August 11, 2011, and again on October 19, 2011, reporting no change in his condition.

Dr. Mehta completed a Multiple Impairment Questionnaire dated February 22, 2012, stating a diagnosis of lumbago and herniated nucleus pulposus with radiculopathy of S1 down the left leg. In this report, he cited to MRI findings that supported his diagnosis, stated that Prochaska's prognosis was poor, and noted that Prochaska was not a

2

malingerer. His clinical findings included muscle spasm, ambulation with a cane, a distressed appearance, and an inability to sit for long periods of time. He further opined that Prochaska was able to sit less than one hour total and stand/walk less than one hour total in an eight-hour workday. He concluded that the symptoms and limitations described within the questionnaire were present since 2010. Dr. Mehta opined, in essence, that Prochaska could not perform even sedentary work.

*2. Evaluating Physician Dr. Edmee Henriquez*

On December 16, 2010, Dr. Edmee Henriquez evaluated Prochaska on referral from Dr. Mehta. Dr. Henriquez diagnosed chronic back pain and recommended neurology and orthopedic surgery evaluations. He saw Prochaska on two other occassions, on June 27, 2011 and on July 19, 2011. During both visits, Prochaska's pain remained at a 7 on a 10-point scale.

*3. Treating Neurologist Dr. Henry Moreta*

Dr. Henry Moreta began treating Prochaska on May 11, 2010. An examination revealed moderately severe left paralumbar sacroiliac notch tenderness, and positive straight leg raising at 30 degrees on the left. Neurological abnormalities included weakness of the left gastrocnemius (graded at 4/5), decreased pinprick sensation in a left S1 distribution, absent left ankle jerk, and an abnormal gait. Dr. Moreta saw Prochaska again on May 18, 2010, found his symptoms to be unchanged, and diagnosed severe left lumbosacral radiculopathy secondary to left L5-S1 disc herniation.

*4. Examining Orthopedic Surgeon Dr. Enrico Mango*

3

Dr. Enrico Mango evaluated Prochaska on February 14, 2012. Consistent with the other physicians that had examined and treated Prochaska, Dr. Mango diagnosed chronic bilateral lumbosacral spine radiculopathy with bulging discs at L2-3, L4-5, and L5-S1 with lumbarization of the S1 vertebral body and severe foraminal narrowing at L5-S1. He further concluded that Prochaska "cannot perform even sedentary work." AR at 17.

Dr. Mango completed a Lumbar Spine Impairment Questionnaire dated February 20, 2012 and, similar to Dr. Mehta, opined that Prochaska's prognosis was "poor" and that he was not a malingerer. AR at 228. Dr. Mango noted Prochaska's primary symptoms included low back pain with bilateral radicular symptoms on the left more than right, numbness of the left foot, decreased range of motion, and difficulties performing activities of daily living. He opined that Prochaska was able to sit two to three hours total, stand/walk two to three hours total in an eight-hour workday, and required unscheduled breaks to rest approximately every thirty minutes.

*5. SSA Consultative Examiner Dr. Erlinda Austria*

Dr. Erlinda Austria evaluated Prochaska once, on April 20, 2011, at the request of the SSA. An examination revealed a limping gait, an inability to heel or toe walk, use of a cane, squatting limited to halfway down, pain with lumbar flexion to thirty degrees and lateral flexion and rotation to twenty degrees, and positive straight leg raising in the supine position. Dr. Austria diagnosed progressive low back pain radiating to the left lower extremity and disc extrusion at L5-S1 with impingement and right neural foraminal narrowing. Dr. Austria opined that Prochaska had "mild to moderate limitations

4

squatting, bending, and engaging in prolonged sitting, standing, and walking," AR at 186-187, but that, in effect, he could still perform sedentary work.

**B. Prochaska's Testimony**

Prochaska testified that he discontinued working due to his back impairment. He stated that he has problems with his attention and concentration when awake, and has difficulty sleeping at night due to his pain. He estimated that he can sit for up to one hour, and stand for up to one hour. He stated that surgery was recommended, but that he had no interest in pursuing it because his father had two back surgeries that did not help his father's pain. He stated he lives with his father, and that he does little work around the house. He further stated that he has difficulty dressing himself and cannot tie his own shoes.

**C. The ALJ's Decision**

In a decision dated March 16, 2012, ALJ Andrew Weiss concluded that Prochaska was not disabled because he retained the residual functional capacity to perform the full range of sedentary work. Applying the first three steps of the sequential five-step evaluation process, the ALJ found that: (1) Prochaska had not engaged in substantial gainful activity since April 24, 2010; (2) his lumbar radiculopathy qualified as a severe impairment; and (3) his lumbar spine impairments did not meet or medically equal the criteria for a listed impairment. In determining Prochaska's credibility, the ALJ found his statements concerning the intensity, persistence and limiting effects of his symptoms to be not credible.

The ALJ then found that Prochaska had the residual functional capacity ("RFC") to perform the full range of sedentary work. Applying that RFC to the remaining two steps, the ALJ found (4) that Prochaska was unable to perform any past work, but (5) that he could perform other work existing in significant numbers in the national economy. In support of these findings, the ALJ's conclusory opinion stated that he assigned "little weight" to the opinion issued by treating physician Dr. Ranjana Mehta that Prochaska cannot perform even sedentary work. Similarly, the ALJ assigned "little weight" to the opinion issued by examining physician Dr. Enrico Mango, who had concluded that Prochaska "cannot perform even sedentary work." AR at 17. Instead, the ALJ accorded "significant weight" to the opinion of one-time consultative examiner Dr. Erlinda Austria, who opined that Prochaska could still perform sedentary work.

## II

Prochaska first contends that the ALJ erred in finding that his lumbar radiculopathy does not meet or medically equal the criteria for a listed impairment. Second, he argues that the ALJ's RFC determination was not supported by substantial evidence. In that regard, he contends that the ALJ improperly discounted the opinion of treating physician Dr. Ranjana Mehta, and that of examining physician Dr. Enrico Mango. Instead, Prochaska argues, the ALJ favored the opinion issued by one-time consultative examiner Dr. Erlinda Austria. Finally, he asserts that the ALJ failed to properly evaluate his credibility.

## III

"In reviewing the final decision of the Commissioner, a district court must

determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence supported the agency's findings, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983).

## A. Listed Impairment

At step three of the disability evaluation, a claimant whose impairment "meets or equals" one of the listed impairments is "conclusively presumed to be disabled and entitled to benefits." *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled."), 416.920(a)(4)(iii) (same). Prochaska contends that his back impairment meets or equals listing 1.04(A). That section requires a showing of "[d]isorders of the spine . . . resulting in compromise of a nerve root . . . or the spinal cord," coupled with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1,

7

§ 1.04(A).

The ALJ's analysis, in its entirety, in regard to step three consisted of the following:

> The record does not establish that the severity of the claimant's impairments rises to listing levels. In reaching this conclusion, the undersigned has specifically considered Listing 1.04, which pertains to the claimant's lumbar radiculopathy. The record does not demonstrate that the claimant's condition is accompanied by nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss with sensory or reflex loss, and a positive straight leg raising test (sitting and supine); spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudoclaudication and inability to ambulate effectively, as required by the listing.

The ALJ's finding fails to set forth a specific rationale in support of his foregoing conclusion; rather, his analysis is a mere recitation of the requirements enumerated in § 1.04(A). He never mentioned the evidence that suggests that Prochaska's impairments may very well have met or medically equaled a listed impairment.

Nevertheless, the absence of an express rationale does not prevent the Court from upholding the ALJ's determination that Prochaska's condition is not equivalent to the 1.04 listing. *See Berry v. Schweiker*, 675 F.2d 464, 468-69 (2d Cir. 1982) (stating that although the Commissioner should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment, the absence of an express rationale will not preclude the Court from upholding the ALJ's determination). A review of the record, and portions of the ALJ's decision, establish that the ALJ's conclusion was supported by substantial evidence.

Prochaska's examinations did not consistently reveal the requisite findings of "muscle weakness, sensory loss, and positive straight leg raising." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). In May 2010, Dr. Moreta, his neurologist, found that his muscle strength was normal at 5/5 in all muscle groups except in the left gastrocnemius, which was only slightly reduced to 4/5, and noted decreased pinprick sensation in the left S1 distribution and an absent left ankle jerk. In November 2010, however, Prochaska's examination with treating physician Dr. Mehta revealed only muscle spasms; there were no abnormal findings of motor, sensory or reflex loss. In April 2011, SSA consultative examiner, Dr. Austria, found full 5/5 strength in the proximal and distal muscles of Prochaska's lower extremities, normal and equal reflexes, and no muscle atrophy or sensory abnormalities. Further, a February 2012 examination with Dr. Mango made no mentioned of any motor or sensory abnormalities and noted only that the remainder of the neurological examination was normal.

While his straight leg raising was positive in the left leg only in May 2010 and in both legs in February 2012, the one-time examination by Dr. Austria established that his straight leg raising was normal at 90 degrees bilaterally in the sitting position. That being said, Dr. Austria did find that his straight leg raising was 80 degrees on the right and 70 degrees on the left in the supine position. The reports in the record containing other positive tests, though, do not state that the straight leg raising was done in both supine and sitting positions. Since straight leg raising tests must be positive from both the sitting and supine positions, it cannot be said that Prochaska satisfies Section 1.04(A). 20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 1.04(A). Although the ALJ failed to set forth a sufficient rationale in support of his decision not to find a listed impairment, his conclusion was nevertheless supported by substantial evidence.

**B. Treating Physician Rule**

Under the Commissioner's regulations, opinions from treating physicians are to be given "controlling weight" as to the nature and severity of the claimant's impairment, as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Schaal v. Apfel,* 134 F.3d 496, 503 (2d Cir. 1998) (quoting 20 C.F.R. § 404.1527(d)(2)). If the opinion of a treating physician is not accorded controlling weight by the ALJ, it must be evaluated according to specific regulatory criteria. *See id.* § 404.1527(d)(2).[1] The ALJ must "give good reasons in [the] notice of determination or decision for [whatever] weight [he accords the] treating source's opinion. *Id.*

Prochaska argues that the ALJ misapplied the treating-physician rule with respect to opinions rendered by Dr. Mehta and Dr. Mango. Only Dr. Mehta, however, who

---

[1] Those criteria, which govern the evaluation of all medical opinions, include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors [that tend to support or contradict the opinion]." *Schaal,* 134 F.3d at 503 (citing 20 C.F.R. § 404.1527(d)). Two other criteria — whether the physician has examined the claimant and whether the physician has treated the claimant — are presumed to exist for the opinion of a treating physician, but must be considered when evaluating any other medical opinion. *See* 20 C.F.R. § 404.1527(d).

10

examined Prochaska on numerous occasions over a two-year period, is properly labeled a treating physician; with respect to Dr. Mango, the record does not establish a relationship extending beyond one report and one isolated visit on February 14, 2012. *See* 20 C.F.R. § 404.1527(d)(2) (suggesting that the hallmark of a treating physician is that he can provide "a detailed, longitudinal picture of [the claimant's] medical impairments"); *see also Miles v. Harris*, 645 F.2d 122, 126 (2d Cir. 1981) (citing *Selig v. Richardson,* 379 F. Supp. 594, 601 (E.D.N.Y. 1974) ("Opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claimant only once. . . .").

Although the ALJ was not duty-bound to accord controlling weight to the opinion of Dr. Mango, he was required to do so with respect to the opinion of Dr. Mehta. Given Dr. Mehta's status as a treating physician, his Multiple Impairment Questionnaire was entitled to controlling weight if it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 404.1527(d); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). Dr. Mehta's Multiple Impairment Questionnaire specifically identified, as clinical findings that demonstrated and supported his diagnosis, abnormalities of muscle spasms, ambulation with a cane, a distressed appearance, an inability to sit for long periods of time, and the MRI findings. In other words, medically-acceptable clinical and diagnostic findings served as the basis for Dr. Mehta's report and his opinions about Prochaska's physical limitations.

Dr. Mehta's opinion is also not inconsistent with the other substantial evidence in

11

the record. For instance, Dr. Mango, completed a Lumbar Spine Impairment Questionnaire which was consistent with Dr. Mehta's opinion. Dr. Mango, too, cited Prochaska's prognosis as "poor." AR at 228. Dr. Mango diagnosed him with chronic bilateral lumbosacral spine radiculopathy with bulging discs at L2-3, L4-5, and L5-S1 with lumbarization of the S1 vertebral body and severe foraminal narrowing at L5-S1. Similar to Dr. Mehta's report, Dr. Mango also cited MRI results that supported his findings. Dr. Mango further noted clinical findings, including a limited range of motion in the lumbar spine, tenderness and spasms of the paravertebral muscles, an abnormal gait, and positive straight leg raising test at 15 degrees on the left and 40 degrees on the right. Dr. Mango opined that Prochaska was able to sit two to three hours total and stand or walk two to three hours total in an 8-hour workday; and further, that he needed to get up and move around every 30 minutes. In short, treating physician Dr. Mehta's opinion was consistent with other substantial evidence in the record.

The ALJ, however, gave "little weight" to Dr. Mehta's opinion that the claimant cannot perform even sedentary work, "as it is not consistent with the substantial evidence of record." AR at 17. Similarly, the ALJ gave "little weight" to Dr. Mango's opinion, stating that "it was not consistent with the substantial evidence of record." AR at 17. Instead, the ALJ gave "significant weight" to the opinion of Dr. Austria, a one-time consultative examiner. AR at 17. The ALJ was not entitled to accord little weight to treating physician Dr. Mehta's opinion in favor of Dr. Austria's opinion without explaining his reasons for doing so. *See Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004). By discounting Dr. Mehta's

opinion, without evaluating the regulatory criteria or providing "good reasons" in his decision, the ALJ violated the treating-physician rule. *See* 20 C.F.R. § 404.1527(d). Accordingly, because the ALJ did not provide good reasons for discounting the opinions of Dr. Mehta and Dr. Mango, remand is necessary. Upon remand, the ALJ should reassess Prochaska's RFC.

## C. Evaluation of Subjective Complaints

Prochaska next contends that the ALJ improperly discredited his statements about his symptoms and limitations. To evaluate the credibility of a claimant's subjective complaints, the ALJ must first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms, and second, evaluate the intensity, persistence, and limiting effects of those symptoms. *See* 20 C.F.R. § 404.1529(b)-(c). The ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96–7. When a claimant's subjective complaints suggest a greater severity than can be shown solely by objective medical evidence, the ALJ must consider other relevant factors, including the claimant's daily activities, the frequency and intensity of the pain and other symptoms, the medications taken and their side effects, and other treatment administered to alleviate pain. *See* 20 C.F.R. § 404.1529(c)(3).

The ALJ found that although Prochaska's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning

13

intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 16. The ALJ stated that he found the MRI imaging studies did not support the alleged severity of Prochaska's impairments: "Although the record confirms a diagnosis of lumbar radiculopathy, it does not support the claimant's allegations of disability." AR at 16. The ALJ impermissibly substituted his own view of the evidence since several doctors found Prochaska to suffer from severe functional limitations that would prevent him from doing even sedentary work. *See Shaw v. Chater,* 221 F.3d 126, 134–35 (2d Cir. 2000); *see also Balsamo v. Chater*, 142 F.3d 75, 91 (2d Cir. 1998) ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him."). This is especially true in making the credibility determination, given that SSR 96-7p provides that a credibility "determination or decision cannot be made solely on the basis of objective medical evidence" simply because "[s]ymptoms cannot be measured objectively through clinical or laboratory diagnostic techniques. . ." Moreover, "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (stating that an ALJ may not discredit subjective complaints solely due to lack of objective support).

The ALJ also noted that, "[s]ignificantly, the claimant has only had conservative treatment and has not required emergency room treatment or hospitalization for

14

exacerbation of his symptoms." AR at 16. While the ALJ properly considered this one factor, he completely ignored any other relevant considerations in making his credibility determination. In the same vein, the ALJ also failed to consider statements made by physicians such as Dr. Mehta and Dr. Mango that Prochaska was "not a malingerer." Also absent from the ALJ's credibility determination included relevant considerations such as Prochaska's work history, daily activities, and any medications taken and their side effects. Despite Prochaska giving detailed testimony on his daily activities, and other relevant factors such as his symptoms and resulting limitations, the ALJ failed to weigh one single other consideration. The ALJ failed, therefore, to assess Prochaska's credibility in accordance with 20 C.F.R. § 404.1529(c)(3).

Furthermore, because the ALJ improperly discounted the opinions of treating physician Dr. Mehta and examining physician Dr. Mango in determining Prochaska's RFC, the ALJ must also reconsider his credibility. The ALJ found his complaints not credible to the extent they were inconsistent with the RFC determination. But once the ALJ reconsiders the medical evidence and obtains additional information, as needed, it may fully support Prochaska's complaints.

**D. Remand**

Having determined that the ALJ erred at step four, remand is appropriate. Prochaska argues for a remand solely for calculation of benefits, or alternatively, for a remand for further administrative proceedings. Remand solely for calculation of benefits

15

is appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir. 1999). Where there are gaps in the administrative record or the ALJ has applied an improper legal standard," however, remand for further proceedings is proper. *Rosa,* 168 F.3d at 82-83.

As the Court cannot say that "application of the correct legal standard could lead to only one conclusion," further proceedings are appropriate. *Schaal v. Apfel*, 134 F. 3d 496 (2d Cir. 2009). The ALJ erred by rejecting treating physician Dr. Mehta's opinion, as well as by failing to furnish good reasons for rejecting examining physician Dr. Mango's opinion. The duties of reviewing the record, weighing conflicting evidence, and drawing conclusions as to Prochaska's RFC fall to the ALJ in the first instance. Given that the ALJ erred at step four in assessing Prochaska's RFC, the new RFC determination will also change the ALJ's step five analysis. Consequently, remand for further administrative proceedings is appropriate. *See Williams v. Apfel,* 204 F.3d 48, 50 (2d Cir. 1999) ("[A] remand for further proceedings is the appropriate remedy when an erroneous step four determination has precluded any analysis under step five.").

IV

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, and Prochaska's motion is granted insofar as the case is remanded to the Commissioner for further proceedings.

**SO ORDERED.**

/S/ Frederic Block
                                                                    FREDERIC BLOCK
                                                                    Senior United States District Judge

Brooklyn, New York
March 28, 2014